UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NEAL HAMANN                                                    PLAINTIFF

v.                                               No. 3:19-cv-488-BJB-RSE

WCA GROUP, LLC                                                 DEFENDANT

\* \* \* \* \*

## Memorandum Opinion and Order

Neal Hamann sued his former employer, WCA Group, for wrongful termination.  Before the parties began to address the merits, WCA asked the Court to throw out this lawsuit because Hamann previously omitted his legal claim from a sworn filing in an earlier bankruptcy proceeding.  Based on this omission, which the bankruptcy court accepted but Hamann later corrected, WCA contends that the doctrine of judicial estoppel bars Hamann from pursuing his suit.  At this early stage in the proceedings, the sole question for the Court is whether to exercise its discretion, based on the limited evidence currently in the record, to conclude Hamann's omission was "not inadvertent."  *See, e.g.*, *Javery v. Lucent Tech.*, 741 F.3d 686, 698 (6th Cir. 2014).

Why Hamann's nondisclosure in a *different* legal proceeding would bar this unrelated claim is hardly obvious.  The remedy WCA requests would be severe for Hamann and a windfall for WCA: forever preventing Hamann, for reasons divorced from the merits, from attempting to vindicate federal rights that WCA allegedly violated.  Judicial estoppel is an equitable doctrine that authorizes this discretionary sanction to police duplicitous behavior in litigation.  Parties may not offend "the integrity of the judicial process by … deliberately changing positions according to the exigencies of the moment."  *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001).  Given this

overarching focus on the integrity of the legal process, courts must act "with caution" to enforce the truth-seeking function of a prior proceeding without "impinging on the truth-seeking function" in a subsequent case. *See Eubanks v. CBSK Financial Group*, 385 F.3d 894, 897 (6th Cir. 2004) (quotation marks omitted).

In litigation following a bankruptcy filing, therefore, the law of the Sixth Circuit allows trial courts to apply judicial estoppel if a party shows three things: (1) the debtor has advanced a position contrary to one taken under oath in bankruptcy, (2) the bankruptcy court adopted that position, and (3) the debtor's prior position (or omission) did not result from mistake or inadvertence. *See Javery*, 741 F.3d at 698.

The third factor—which implicates the debtor's motive—is not particularly easy to satisfy at the summary-judgment stage. "Because direct evidence of motive is difficult to produce, claims involving proof of a defendant's intent seldom lend themselves to summary disposition." *Kennedy v. City of Villa Hills*, 635 F.3d 210, 218 (6th Cir. 2010) (quotation marks and citation omitted). And that third factor remains genuinely in dispute at this stage of Hamann's case.

Hamann commenced his Chapter 13 bankruptcy proceeding in 2016, alleges he was wrongfully fired by WCA in May 2019, and converted his bankruptcy to a Chapter 7 liquidation that same month. He concedes he never told the bankruptcy court about his potential claim against WCA for employment-law violations and damages. But Hamann contends this omission was the innocent mistake of a debtor who lacked any motive to conceal his claim, not the strategic maneuvering of a litigant playing fast and loose with the truth. WCA asks the Court to infer, based partly on the timing of Hamann's filings, that Hamann did in fact have a motive to hide this claim and obscure his assets. Yet WCA fails to explain how the Bankruptcy Code (or Court) would've rewarded Hamann for that behavior. Nor does WCA identify any undisputed record evidence

2

showing Hamann acted with a bad-faith motive to conceal.  These deficiencies in the current record render judicial estoppel inappropriate, and the Court accordingly **DENIES** WCA's motion for summary judgment.

## I.     Bankruptcy, termination, and estoppel

Hamann worked as a "Lead Installer" for WCA—a heating, cooling, and plumbing company—from June 2018 until May 2019.  Complaint [DN 1-2] ¶¶ 5, 10; Summary Judgment Motion [DN 10-1] at 1.  While employed, Hamann accused WCA of not paying him all of the "truck bonuses" it owed him.  Complaint ¶¶ 12–13.  When his supervisor disagreed, Hamann appealed to WCA's general manager (his supervisor's boss) about the unpaid bonuses.  *Id.* at 14.  The general manager discussed the issue with Hamann's supervisor, who (according to Hamann's complaint) fired Hamann the next day.  *Id*. ¶¶ 17–24.  Although WCA insists Hamann resigned, Hamann claims his supervisor fired him in retaliation for raising the bonus issue with the general manager.  *Compare* Answer [DN 5] ¶ 22 *and* Motion at 1 *with* Complaint ¶¶ 23–25.  Hamann sued WCA Group for wrongful termination and violations of the Kentucky Wage and Hour Act.  Complaint ¶¶ 27–43.

During his employment with WCA, Hamann was involved in personal bankruptcy proceedings before the United States Bankruptcy Court for the Southern District of Indiana.  Hamann originally filed for Chapter 13 bankruptcy on September 8, 2016.  *In re Hamann*, No. 4:16-bk-91441 (Bankr. S.D. Ind. Sept. 8, 2016) ("Hamann Bankruptcy"), ECF No. 1 (Chapter 13 Voluntary Petition).  In a "reorganization" bankruptcy under this chapter of the Code, Hamann would keep his property but negotiate a plan to pay his debts from future earnings.  *See* 11 U.S.C. § 1306; *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015).  The plan Hamann filed with the bankruptcy court set forth his existing assets: a car, TV, clothing, and a small 401k.  Hamann

Bankruptcy, ECF No. 12 at 3–8.  The form Hamann filed asked about "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment," but Hamann did not list the potential proceeds of this claim against WCA—because of course Hamann hadn't yet been hired, let alone fired.[1]  *Id*. at 4, 8.

Two and a half years after the Chapter 13 petition, and one week after WCA allegedly fired him, Hamann converted his bankruptcy from a Chapter 13 reorganization to a Chapter 7 liquidation.  *Id*.  Under Chapter 7, the debtor sells most of his assets, creditors receive a prorated share of the estate, and the court wipes away the balance for a fresh start.  *See* 11 U.S.C. §§ 1123–1127; *Harris*, 135 S. Ct. at 1835.  A week after notifying the bankruptcy court of this conversion, Hamann filed an amended schedule of assets and liabilities, which again did not mention WCA's alleged wrongful termination as a "contingent and unliquidated claim."  11 U.S.C. § 521(a)(1).  He should have included that lawsuit, as WCA explains, because a "debtor in a Chapter 13 proceeding has a duty to disclose any potential claim as an asset to the bankruptcy court in a schedule of assets and liabilities."  *Davis v. Fiat Chrysler Automobiles U.S.*, 747 F. App'x 309, 314 (6th Cir. 2018).  Indeed, Hamann did not list his potential lawsuit against WCA as an asset at any time before the bankruptcy court granted his final discharge on September 4, 2019.

Two months before the bankruptcy proceedings ended, Hamann—a Kentucky resident— sued WCA in Kentucky state court.  The employment-law claims he asserted are now before this Court after WCA—an Indiana company—removed the case based on the diverse citizenship of the parties.  *See* 28 U.S.C. § 1332.  WCA moved for summary judgment on the ground that Hamann

---

[1] WCA's Motion (at 5) notes that Hamann's claim for unpaid bonuses, as opposed to wrongful termination, accrued in early 2019 when WCA first did not pay bonuses Hamann had earned.  Regardless of the specific date of accrual, Hamann's claim against WCA accrued well after he initially filed his Chapter 13 petition in 2016 and before he converted to a Chapter 7 liquidation.

cannot contend he has a valuable employment-law claim after he previously failed to tell the bankruptcy court about it.  Under the doctrine of judicial estoppel, WCA argues, this lawsuit is inconsistent with Hamann's prior position in bankruptcy court indicating (through his silence) that he had no claims against WCA.

Shortly after WCA filed its motion, Hamann reopened his bankruptcy case and amended his asset disclosure to include this claim.  *See* Opposition to Summary Judgment [DN 19], Exs. A, C.  The bankruptcy court made no changes to the discharge order and quickly closed Hamann's estate again.  *Id.*, Ex. D.  Despite this amendment, WCA's Reply [DN 20] maintains that Hamann's initial nondisclosure before the bankruptcy court contradicts and therefore bars his claims in this lawsuit.[2]

## II.    The Court's standard for reviewing WCA's summary judgment motion

Rule 56(a) of the Federal Rules of Civil Procedure requires that the court grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  No "genuine dispute" exists if a reasonable fact-finder could not accept the nonmoving party's version of the facts (that is, "no genuine issue for trial" remains for a jury to resolve), *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986), or if, even on the nonmoving party's version of the facts, the law would still require a judgment for the movant (that is, "no genuine issue for trial" remains that is

---

[2] Throughout its summary judgment motion, WCA cites exhibits that do not appear in the record.  This failure to comply with Rule 56's requirement that a movant "cit[e] particular parts of materials in the record" could alone support the denial of summary judgment.  *See* Fed. R. Civ. P. 56(c)(1)(A), 56(e).  In any event, WCA's district-court omission in objecting to Hamann's alleged bankruptcy-court omission does not change the disposition of this motion.  As described below, even if the record supported WCA's factual assertions, a genuine issue of material fact remains regarding Hamann's motive and intent in excluding this claim from the bankruptcy plan.

relevant and material to the legal claim), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To determine whether a genuine factual dispute exists, the court should not "weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 400 (6th Cir. 2003).  Instead, the court must view "the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).  WCA, as the moving party, bears the initial burden of stating the basis for the motion and identifying evidence in the record (or lack thereof) that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *cf. Bush v. District of Columbia*, 595 F.3d 384, 387 (D.C. Cir. 2010) (non-movant's failure to cite specific record evidence supporting essential element of its claim could support summary judgment).  If the moving party satisfies its burden, the non-moving party—here, Hamann—must identify specific evidence proving the existence of a genuine dispute of fact for trial.  *Liberty Lobby*, 477 U.S. at 250.  "Relying on pleadings or 'metaphysical doubts' will not forestall summary judgment; citing to the record is essential."  *Burgett v. Troy-Bilt LLC*, 970 F. Supp. 2d 676, 680 (E.D. Ky. 2013).

III.  **A genuine factual dispute about Hamann's motive and intent prevents the Court from granting summary judgment to WCA on the basis of judicial estoppel**

The Sixth Circuit has recognized that judicial estoppel may prevent a debtor like Hamann from pursuing a claim in litigation that he failed to disclose as an asset in a bankruptcy proceeding. *See, e.g.*, *Browning v. Levy*, 283 F.3d 761, 775–76 (6th Cir. 2002).  But the doctrine does not apply automatically; its application remains a question of the court's equitable discretion.  *See New Hampshire*, 532 U.S. at 750; *Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 453 (6th Cir. 2005).  The case for estoppel is at its zenith when a litigant's adoption of a contrary position

acts to the "prejudice of the party who has acquiesced in the position formerly taken…." *New Hampshire*, 532 US at 743.

To gain the extraordinary benefit of escaping liability before a claim is even considered, the defendant invoking estoppel bears the burden of proving each of estoppel's three requirements: "(1) the debtor assumed a position contrary to one [he] asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the debtor's omission did not result from mistake or inadvertence." *Javery*, 741 F.3d at 698.  Based on the summary-judgment record before the Court, WCA's motion satisfies the first two conditions, but not the third.

### A. Assumption of a contrary position

In order to receive the benefits of bankruptcy protection, a Chapter 13 debtor must disclose all his assets to the bankruptcy court.  11 U.S.C. § 521(a)(1); *White v. Wyndham Vacation Ownership*, 617 F.3d 472, 479 (6th Cir. 2010).  This duty to disclose begins when the debtor initially files his petition and continues throughout the proceeding; acquiring new assets (including, for example, a valuable legal claim) requires the debtor to update his schedule of assets. *See* 11 U.S.C. § 1306(a); *Harris*, 135 S. Ct. at 1835 ("[T]he Chapter 13 estate from which creditors may be paid includes both the debtor's property at the time of his bankruptcy petition, and any wages and property acquired after filing."); *Davis*, 747 F. App'x at 314 ("Th[e] disclosure obligation is ongoing, meaning a debtor has an express, affirmative duty to disclose all assets, including contingent and unliquidated claims that arise at any time during the bankruptcy proceeding." (quotation marks and citation omitted)).

Hamann asserts, incorrectly, that "failure … to amend is not an affirmative statement under oath" subject to scrutiny under the estoppel doctrine.  Opposition at 6.  The Sixth Circuit has said

otherwise, treating nondisclosure of assets, despite the continuing disclosure obligation, as akin to a representation that they do not exist. *See White*, 617 F.3d at 479 (debtor's "omission" of a potential claim "was contrary to [debtor]'s later assertion of the harassment claim" and tantamount to an assertion that the claim "did not exist"); *see also Stephenson v. Malloy*, 700 F.3d 265, 274 (6th Cir. 2012) ("omission was equivalent to a statement that there were no such claims and was therefore inconsistent with [the plaintiff's subsequent] pursuit of the instant action").

Although Hamann's employment-law claim did not arise until after he filed his initial Chapter 13 petition, the Bankruptcy Code imposed an affirmative duty on Hamann to update his schedule of assets throughout the proceedings. His undisputed failure to update the court before discharge is therefore taken as a tacit assertion that the claim did not exist. *See White*, 617 F.3d at 479. And even an implicit indication to the bankruptcy court that Hamann expected no damages, contrary to Hamann's position in this case, is the sort of contradiction that judicial estoppel is meant to deter.

**B. The Bankruptcy Court adopted Hamann's position**

The summary judgment record also establishes that the bankruptcy court adopted Hamann's position that no inchoate legal claim existed. The Sixth Circuit has explained that a bankruptcy court's confirmation of a "bankruptcy plan without the potential claim listed as an asset … is sufficient to satisfy the second consideration" of the estoppel analysis. *Davis*, 747 F. App'x at 314; *see also White*, 617 F.3d at 479 (bankruptcy court's approval of payment from the estate on the basis of a party's schedule of assets constitutes "judicial acceptance" of the party's position); *Stephenson*, 700 F.3d at 274 (discharge in reliance on representations concerning assets, "including the representation that this lawsuit did not exist[,] represented adoption of the contrary position"). The bankruptcy court here confirmed a plan and issued payment based on

Hamann's representations in his schedule of assets.  Hamann Bankruptcy, ECF No. 52 at 14 (Chapter 13 Trustee's Final Report and Account); *Id.*, ECF No. 58 at 1 (Order Discharging Debtor).  This suffices as an implicit adoption of Hamann's assertion-by-omission that he had no potential claims.  *See Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988).

### C. The summary judgment record does not establish, beyond reasonable dispute, whether Hamann's omission was an inadvertent mistake

Judicial estoppel also requires that the inconsistent position must not result from mistake or inadvertence.  *See White*, 617 F.3d at 476; *Browning*, 283 F.3d at 776.  In the bankruptcy context, the Sixth Circuit has recognized three situations in which nondisclosure is considered inadvertent: the debtor may have lacked knowledge of the factual basis for the claims, motive for concealment, or bad faith.  *White*, 617 F.3d at 478.  Courts treat these factors disjunctively; if Hamann satisfies any one of them, the Court may conclude that his omission was a mere mistake.  The factors guide the Court's overarching determination of whether Hamann's omission was inadvertent.  *Javery*, 741 F.3d at 698.  That Hamann knew about the factual basis for his claims is not disputed in this case, but the record is unclear regarding whether Hamann acted in bad faith and with an improper motive to conceal his claim.

Rather than point to any specific evidence, WCA asks the Court to infer from the circumstances of the two proceedings that Hamann's bankruptcy omission was an intentional effort at concealment.  It relies on a passage from *White* in which the Sixth Circuit indicated that a Chapter 13 debtor presumptively has an "interest to minimize income and assets."[3]  617 F.3d at

---

[3] The law of the Sixth Circuit reveals tension even on this proposition. *Lewis v. Weyerhaeuser*, which *White* cited in support of this presumption, *see* 617 F.3d at 479, concluded that *always* inferring a debtor's motive to conceal would "too narrow[ly] … interpre[t] judicial estoppel," *Lewis*, 141 F. App'x 420, 426 (6th Cir. 2005).  An automatic presumption, the *Lewis* court explained, would compel courts to disregard the various real-world incentives and actions of debtors who omit their claims. *Id.*  Such a presumption also would seem to flip the normal summary-judgment burden against non-movant plaintiffs, though the law requires trial courts to construe the record in their favor.

479.  That is true as far as it goes—but not as far as WCA tries to extend it.  The general interest in minimizing assets does not necessarily answer the Sixth Circuit's overarching question: whether the specific omission was "inadvertent."  *See Javery*, 741 F.3d at 698.  Regardless of presumed motive or actual incentive, what matters most under the equitable doctrine of estoppel is evidence regarding what the debtor actually did and why: "Failure to disclose a claim in a bankruptcy proceeding also may be excused where the debtor lacks a motive to conceal the claim … *or* where the debtor does not act in bad faith."  *Javery*, 741 F.3d at 698 (citation omitted and emphasis added).  Based on the record as WCA presents it today—which does not identify any sworn testimony from Hamann on this point—no undisputed evidence indicates that Hamann acted in bad faith or out of a motive to conceal his claim against WCA.  As the Sixth Circuit concluded in *Javery*, the current records suggests that "any omission was almost certainly due to carelessness or inadvertent error as opposed to intentional, strategic concealment or impermissible gamesmanship."  *Id.*

The presumption WCA draws from *White* rests on the notion that financially distressed plaintiffs may omit their claims in order to hide those assets from their creditors.  Whether disclosing the claim when it accrued would have exposed any prospective damages to recovery by Hamann's creditors, therefore, is critical to WCA's intentional-concealment theory.  If the debtor omits property that would *not* be liquidated in bankruptcy, a court would not have the same basis for presuming a motive for intentional concealment.  *See Javery*, 741 F.3d at 698 (declining to apply judicial estoppel to an undisclosed disability-insurance claim because the proceeds "are completely exempt from the debtor's estate," regardless of disclosure).

A debtor's cause of action that arises pre-petition generally would become part of the estate if and when the debtor converts his case to a Chapter 7 proceeding.  Nondisclosure of that claim

could theoretically help minimize the debtor's assets subject to liquidation.  *See White*, 617 F.3d at 479.  In this case, however, no one contends that Hamann's claim against WCA ever would have become part of his bankruptcy estate—regardless of disclosure.  "[A] Chapter 7 estate *does not include* the wages a debtor earns or the assets he acquires after the bankruptcy filing."  *Harris*, 135 S. Ct. at 1835 (emphasis added) (citing 11 U.S.C. § 541(a)).  WCA points out that before Hamann converted his bankruptcy to Chapter 7, he filed under Chapter 13, where the estate *would* include "any wages and property acquired after filing."  *Id*.

But the Supreme Court has clearly held that Chapter 7's rule trumps Chapter 13's in a conversion: "a debtor who converts to Chapter 7 is entitled to return of any wages not yet distributed by the Chapter 13 trustee."  *Id*.  The Bankruptcy Code instructs that "when a case under chapter 13 of this title is converted to a case under another chapter[,] property of the estate in the converted case shall consist of property of the estate, *as of the date of filing of the petition*. 11 U.S.C. § 348(f)(1)(A) (emphasis added).  The Sixth Circuit previously acknowledged this rule when it held that Chapter 7 proceedings commenced when the debtor originally filed a Chapter 11 proceeding, not at the time of conversion.  *In re Walter*, 45 F.3d 1023, 1028 (6th Cir. 1995).

Before Hamann sued WCA, he sought to convert his bankruptcy to Chapter 7, and the bankruptcy court granted his request.  Even if Hamann had immediately disclosed the cause of action to the bankruptcy court, the court would not have had an opportunity to distribute any value from this nascent lawsuit before conversion.  And in any event, *Harris* tells us that Hamann would have been entitled to a "return" of any value of this suit that the bankruptcy court distributed.  *See* 135 S. Ct. at 1835.  Under these circumstances, therefore, Hamann's creditors *never* could have reached his claim against WCA, and WCA offers no basis on which to conclude that bankruptcy law gave Hamann any motive to intentionally conceal this lawsuit from creditors or the court.

That Hamann's cause of action accrued approximately simultaneously with his Chapter 7 conversion distinguishes the precedents on which WCA relies and—best the Court can tell—from any other relevant estoppel precedent within this circuit. The decisions cited above regarding a debtor's motive to minimize income and assets all concerned debtors whose causes of action accrued *before* the initial Chapter 13 filing. *See, e.g.*, *Eubanks*, 385 F.3d at 895–96; *Lewis*, 141 F. App'x at 421–22; *White*, 617 F.3d at 474–75; *cf. Stephenson*, 700 F.3d at 267 (initially filed as Chapter 7 petition, with no Chapter 13 filing predating the cause of action). When a debtor's cause of action arises pre-petition, not only is the debtor obligated to include the claim in the schedule of assets, but the claim also would become part of the estate if and when the debtor converts his case to a Chapter 7 proceeding. Although all debtors have an *obligation* to disclose new assets during bankruptcy proceedings, *see* 11 U.S.C. § 521(a)(1), debtors with a pre-petition claim also may have an *incentive* to hide that asset. That incentive is what WCA's precedents emphasize, and is what WCA's summary-judgment motion lacks here. Hamann's cause of action accrued post-petition, when he had little incentive to conceal a claim whose proceeds he is almost certain to keep regardless of the bankruptcy.

This is why district courts throughout the country have rejected attempts to use judicial estoppel to stymie post-petition causes of action.[4] For this Court to reach the conclusion that WCA urges, the Court would have to extend *White*'s presumption to include post-petition claims under

---

[4] Decisions refusing to presume a motive to conceal a post-petition cause of action include *Muirheid v. U.S. Bank*, No. 08-169, 2009 WL 10675149, at \*5–6 (E.D. Ky. July 31, 2009) (debtor whose cause of action accrued after Chapter 13 filing and near Chapter 7 conversion lacked motive to conceal); *Sherman v. Wal-Mart Assocs.*, 550 B.R. 105, 109–10 (N.D. Tex. 2016) (debtor's post-petition claim was not part of the Chapter 7 estate); *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 639–41 (E.D. Va. 2016) (same). Other district courts have reached similar conclusions at different points in the judicial-estoppel analysis. *See Garcimonde-Fisher v. Area203 Marketing*, 105 F. Supp. 3d 825, 834–35 (E.D. Tenn. 2015) (plaintiff never asserted a contrary position because the cause of action accrued after the Chapter 13 filing); *Farmer v. Taco Bell Corp.*, 242 B.R. 435, 439–40 (W.D. Tenn. 1999) (cause of action that arose after a Chapter 13 petition, but before a Chapter 7 conversion, was not part of the estate).

Chapter 7.   Motion at 7 (citing *Owens v. Avarto Digital Servs.*, No. 3:15-cv-905, 2016 WL 7173793 (W.D. Ky. Dec. 8, 2016)).[5]  The Sixth Circuit's reasoning in *White* and other decisions offers little reason to presume those precedents would mandate a presumption of motive and intentional concealment under these circumstances.

WCA offers two reasons to doubt Hamann's good faith and lack of motive.  Neither supplies a basis for granting summary judgment.

*First*, WCA notes that Hamann did not inform the Bankruptcy Court of this lawsuit until after WCA filed this summary judgment motion.  This, according to WCA, casts doubt on whether Hamann acted out of candor—or just because he got caught.  Hamann, for his part, maintains he simply did not know that he needed to include this claim in his bankruptcy disclosures until WCA filed its motion.  *See* Opposition at 8.  At that point, he promptly reopened his bankruptcy case and listed the suit in his schedule of assets.  *See id.*, Exs. C, D.  The bankruptcy court promptly re-closed the case after making no changes to the Chapter 7 discharge.  *Id.*, Ex. D.

The court acted exactly as expected: the post-petition legal claim, as described above, was not a part of Hamann's estate, so the court lacked any basis to revisit the conversion or discharge.  To be sure, courts have recognized that assessing the good faith of an omission after a *mea culpa* may create perverse incentives.  *See Scisney v Gen. Elec. Co.*, No. 4:14-cv-8, 2015 WL 7758542 at *6 (W.D. Ky. Dec. 1, 2015).  Yet in the absence of other evidence indicating a motive or plot to conceal, the fact that Hamann and the bankruptcy court both acted with alacrity in response to

---

[5] *Owens*, though factually similar to this case, differs in two important respects.  First, the debtor in *Owens* never attempted to reopen and correct her bankruptcy filing, which undermined any credit she might otherwise have received for good faith.  Second, the discussion WCA cites in *Owens* did not account for a critical point at issue here—how the timing of the Chapter 7 conversion negated the risk that the debtor might shield assets through concealment.

WCA's objection—and without any effect on Hamann's post-bankruptcy finances—provides no support for WCA's effort to ascribe bad faith.

*Second*, in a last-ditch effort, WCA argues in its Reply Brief that the Court should nevertheless assign nefarious motives to Hamann's omission because disclosure could have affected Hamann's ability to convert his case to Chapter 7 and receive a no-asset discharge.  DN 20 at 2–4.  WCA offers no reason rooted in bankruptcy law, however, why the specific proceeds from this lawsuit would have been exposed to creditors.  All WCA can muster is the speculation, untethered to any facts about Hamann's actual financial predicament, that he "may not have received the benefit of a conversion had he listed all of his assets in the first place."  *Id.* at 2.  It is at least conceivable that a debtor might omit a contingent asset like this to minimize the estate and obtain a Chapter 7 conversion.  *See* 11 U.S.C. § 707(b) (a court may convert a Chapter 7 bankruptcy back to a Chapter 13 bankruptcy if a debtor has substantial income).  But nothing in the portions of the record identified by WCA supports an inference that Hamann's assets were substantial enough to bar conversion—with or without this lawsuit—or that Hamann ever contemplated such a maneuver.  Absent any evidence that Hamann in fact intended to avoid a reversed conversion, speculation about his contingent motives is not enough to overcome the bankruptcy court's actual decision and warrant summary judgment.  *See Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1187 (11th Cir. 2017) (en banc) ("We see no good reason why, when determining whether a debtor intended to manipulate the judicial system, a district court should not consider the bankruptcy court's treatment of the nondisclosure.").

*Finally*, WCA invokes the importance of accurate representations of assets to bankruptcy courts.  True enough.  But that abstract goal, however laudable, provides little help in answering the specific question before the Court: whether Hamann's inaccuracy was intentional or

inadvertent.   At this stage in the proceedings, at least, the record provides no reason to infer that Hamann's nondisclosure was deceptive rather than inadvertent.   Certainly WCA cannot carry its burden to establish, beyond reasonable dispute, that Hamann strategically took contrary positions in parallel court proceedings.   *See* Fed. R. Civ. P. 56(a).   The record provides at least as much support for an inference of inadvertence—which is not the stuff of judicial estoppel.   That discretionary doctrine protects courts from malice, not mistakes.   Accordingly, the "Sixth Circuit has urged courts to apply judicial estoppel with caution to avoid impinging on the truth-seeking function of the court." *Javery*, 741 F.3d at 698.   Summary judgment is therefore unwarranted under the law of this Circuit and the current record in this case.

## Conclusion

The Court **DENIES** WCA's motion for summary judgment [DN 10].

January 29, 2021

Benjamin Beaton, District Judge

United States District Court

cc:      Counsel of Record